The final case this morning is Commonwealth of Pennsylvania v. President of the United States regarding the request for intervention by the Little Sisters of the Poor, St. Peter's and Paul Holm. Ms. Windham? May it please the Court. My name is Lori Windham and I represent the Little Sisters of the Poor. I'd like to reserve five minutes of my time for rebuttal. Granted. Thank you. This case is about whether the Constitution and federal law allow the government to grant a religious exemption from the federal contraceptive mandate. This is a question of enormous importance for the Little Sisters of the Poor who have been seeking just such an exemption since 2013. The Little Sisters took their case all the way to the Supreme Court and the Supreme Court directed the parties to arrive at an alternative approach. That alternative approach is what Pennsylvania is seeking to enjoin in this case. With it, Pennsylvania, with its lawsuit, Pennsylvania seeks to strip the Little Sisters of their regulatory exemption and undermine, perhaps overturn, the Little Sisters' existing injunction. The Little Sisters have a protectable interest in both the regulatory exemption and in their injunction. But at this point, where the district court found that the IFRs were constituted without proper posting for comment and, therefore, invalid for that reason and also that they were inconsistent with the statutory language, in looking at interest, aren't we confined to just those claims which are before us because that was the decision of the district court? And that if we, not at this argument, but the panel hearing the basic argument from the district court decision, if they determine that, yes, indeed, the IFRs are invalid because they were created without the proper APA comment and that they are contrary to the language of the statute, that's a position that both you and the federal government are opposing. Don't we have to look, at this point in this case, what is at issue and not the other potential constitutional claims that the plaintiffs had in their original complaint because if the IFRs are held to be invalid, probably this case will go away? Judge Roth, the Little Sisters are not seeking to intervene merely for the purposes of the currently ongoing appeal. They are seeking to intervene in the case. And so they are concerned about all of the claims that Pennsylvania is bringing. That's, I think, response one. Response two is that the district court, in issuing its nationwide injunction against these exemptions, did not merely rule on the notice and comment issue. As you said, it also ruled that the federal government had acted contrary to law. Part of the analysis that the district court engaged in, and that I'm sure Pennsylvania will be asking this court to engage in, is whether the federal government's new regulations were required by the Religious Freedom Restoration Act. This is precisely the question that the Supreme Court took up in Zubik. The Little Sisters were parties to Zubik. And so Pennsylvania's lawsuit is asking this court to re-litigate and re-hear the central question that the Supreme Court was looking at in Zubik. Should we not perhaps wait to rule on the motion to intervene until we see what happens in the appeal from the district court opinion? Because if the case is over, there's no need for the Little Sisters of the poor to intervene. What the Little Sisters are concerned about with the Third Circuit appeal is that that appeal is going to be heard and argued without their participation, and that the Third Circuit is going to be rendering an opinion on the Religious Freedom Restoration Act and whether it compels an exemption for groups like the Little Sisters. But is that really going to be involved in the appeal from the district court opinion as it exists today? Yes, Your Honor. The district court's opinion, and this was page 199 through 200 of the appendix. The district court looked at this court's decision in Geneva College, which was one of the cases that the Supreme Court vacated in Zubik. It was one of the cases that was combined with the Little Sisters case before the Supreme Court. And the district court, we would say erroneously, held that it was still bound by the now vacated holding of Geneva College. And so it seems to me, and I think it is apparent from the record and from the district court's opinion below, that this court is going to be asked to weigh in on, number one, what the Zubik order means, what authority it gave to the federal government, what conditions it placed on the federal government, and number two, whether the Religious Freedom Restoration Act compels an exemption for the Little Sisters of the poor and other groups like them. This court in previous cases has said that it has a policy preference for efficiency in Kleisler v. U.S. Forest Service. This court said that early intervention was positive because, and I quote, the game may already be lost by the time the interveners get to bat in the late innings. The Little Sisters want to be able to participate in this case, and under Rule 24 are entitled to participate in this case from the beginning so that they can help to frame the arguments, so that they can shape the decisions, so that if this court decides on this case and it is then appealed to the Supreme Court, we're not in a position where the Supreme Court is revisiting the central question in Zubik and being asked to construe Zubik without the Little Sisters in the room. Counselor, I'm concerned about how to frame your interest here, particularly given that you've got this injunction against fines and penalties. Help me to understand the relationship between the remand in Zubik and the Tenth Circuit case that's still pending there, hasn't been dismissed, the Supreme Court sending you back to have this opportunity to discuss, to work something out with the government, and the IFRs that come out. The IFRs, are they a settlement of this? Are they an interim settlement? Do you have some kind of special stake in them? It's odd. It's an odd case because you're not parties, strictly speaking, to the IFR, right? I'm not clear that you have a contractual right under the IFRs, but how do we understand the relationship between the two that would give you an interest that's different from the interests of lots of other religious people out there who might object on conscientious grounds and might want to intervene? Are you set apart from them in some way? Well, I'd say that we're set apart, number one, due to the Zubik decision. The Little Sisters were parties to Zubik, and the Supreme Court did something there which I would say is unusual, and that's why this case is in a somewhat unusual posture. The Supreme Court did not simply give the Little Sisters an injunction and say, case over, everyone go home. The Supreme Court granted the Little Sisters protection from the fines, an injunction that the government could not fine them, and then remanded the cases back to the lower courts with a direction for the parties to arrive at an alternative approach. And that alternative approach is what is at stake in the IFR. The government admitted in the IFR that one of the reasons for promulgating that IFR was to try and resolve the pending litigation, and that litigation remains pending before the Tenth Circuit. So the Little Sisters are in a position where the Supreme Court, they took their case to the Supreme Court, the Supreme Court said parties explore an alternative approach. The government has now come up with an alternative approach, and Pennsylvania is seeking to enjoin that. And so what ultimately happens with the government exemption, whether the IFR is constitutional, is lawful, whether the government can grant this sort of exemption to the Little Sisters in the future. So help us to fit this within Kleisler, which you rely on heavily in your brief. Kleisler, and if we look at the concurrence in that case as well, suggested we don't want to let just anybody who has a general interest in potentially bidding for timber in. It was significant that Ridgway had a bid that was accepted. But do you have a contract-like interest here? I mean, I took part of your answer to be was, well, the IFRs, the preamble, the recitals say that they're designed to resolve a bunch of lawsuits, and you named yours as one of them, but is that enforceable? I mean, do you have an interest or a right to enforce that? Because it doesn't seem like the Tenth Circuit case has gone away. You haven't dismissed it. You haven't treated it as if it was a settlement of that. So how can we understand the IFRs as the resolution of the Tenth Circuit case? My argument, to be clear, has not been that the IFR is the resolution of the Tenth Circuit case, but that it is the government's step toward attempting to fulfill the Supreme Court's order and achieve an ultimate resolution of the case. What this Court said in Brody v. Spang was that an interest, a party has an interest that is sufficient and may be impaired under Rule 24 when the interest may be affected or impaired as a practical matter by the disposition of the action. The Little Sisters have two interests here that may be affected, and one of them already are being affected and impaired. One of those interests is their interest in receiving a complete regulatory exemption from the mandate, something they have sought since 2013. The second interest is the interest in maintaining and enforcing the injunction that they received from the Supreme Court in Zubik in the face of a challenge that might narrowly construe their injunction or ultimately seek to go to the Supreme Court and overturn that injunction. This Court's intervention cases have not been limited only to situations where there is a contract. That issue, I think an interesting, going outside of this circuit for a moment, an interesting parallel is the Fifth Circuit's decision in Texas v. the United States where you had recipients of DAPA who were permitted to intervene to defend that policy alongside the federal government because they were the parties who benefited from the DAPA program. I would say the Little Sisters' interest here is particularly concrete. This Court has said that the interests that are protected are legally cognizable. Assuming you get past that, why isn't it adequate for the government to carry the banner on the Little Sisters' behalf on both of those issues you just cited? What this Court has said is that the Little Sisters' need only show that, or the parties seeking to intervene need only show that representation may be inadequate. That's from Mountaintop Condominium. I know there's been some discussion back and forth about the presumption, but in Kleisler and Brody, two cases involving government defendants, where this Court applied that presumption, it still found that the presumption was overcome because the government had broad interests while the interveners had narrow and specific interests. What this Court said in Brody was that they diverged sufficiently that the existing party cannot devote proper attention to the applicant's interests. If we accept that argument that your interests are narrow and more focused, that would suggest that you shouldn't be able to come in to defend the moral exemption or the corporate for-profit portion of the exemption, because your whole argument for inadequate representation is, we're in this different situation, we want to hold this, and as a refer matter, that might cut one way for the religious exemption, another way for moral. So if we elect you in at all, shouldn't it just be limited to the non-profit piece of this? Actually, in our brief, and I believe it's footnote one of our brief, we stated that we are not looking to defend the moral exemption. We are not looking to defend that IFR, the portions of the IFR that do not benefit the Little Sisters of the Poor. And so is that also true of the for-profit piece of the religious exemption? I believe that some of the arguments the Little Sisters make broadly could be relevant to the for-profit exemption, but they're not seeking to intervene in this case in order to defend the for-profit exemption. They are seeking to intervene in this case to defend the portion of the exemption that applies to them. This is another reason why the government's representation here is not adequate, My definition of the government's interest is a lot broader than your client's parochial interest. Yes, Judge Hartman. And the government's interest has not only an interest in defending both IFRs and all the pieces of both IFRs, the government also has an interest in defending its own authority against the injunction that the Little Sisters hold against it, and in defending its side of the lawsuit with the Little Sisters that has not been settled. I also want to note that the Little Sisters, if they are able to intervene, plan to make arguments that the government has not yet made. The Little Sisters have argued since 2013 that this mandate, as it's applied to them, raises constitutional problems. The federal government has not made that argument. It has defended their new IFRs below, saying that RFRA compelled them to make these new IFRs, saying that Zubik required them to make these new exemptions. But they have not been willing to admit that their prior regulation was actually unconstitutional. The Little Sisters believe that it is. The Little Sisters also believe that the government does not have the power to regulate third-party administrators in the way it did in the previous mandate, and that is something that is carried over as an optional feature in the current mandate. And the Little Sisters take a broader view of the government's ability to act here, under the Religious Freedom Restoration Act, to protect religious interveners. I see my time has expired, but for all these reasons, the Little Sisters, the government's representation is not adequate to protect the interests of the Little Sisters in this case. Thank you, Ms. Winder. We'll hear you on rebuttal. Mr. Fisher? Thank you, Your Honor. Thank you, Your Honor. May it please the Court. Michael Fisher for the Commonwealth of Pennsylvania. The District Court reached the correct decision in this case, denying the intervention motion, both on the basis of the finding that the Little Sisters did not have an adequately protectable interest in this matter, and on the basis that they had not shown that the government would not adequately represent any interest that they did have. Can we take the second one first? Certainly. What's your response to what Ms. Winder just indicated? They conceded that they're not defending the moral reg, nor the corporate reg. We're just dealing with the religious reg. So doesn't that sort of provide protofacia evidence that there's a divergence in interest between them and the federal government? Well, as an initial matter, I believe their intervention motion filed in the district court indicated that they wanted to defend at least the religious exemption in its entirety. They submitted a proposed answer, which I believe urged the court to reject the Commonwealth's entire case. I do not recall them making an argument. I don't think they did make the argument in the district court that they wanted to defend one narrow aspect of the religious exemption. Rather, they conceded that here, but that was not before the district court. What's your response to that? Your Honor, that does not change the fact that both the Little Sisters and the government have the same interest in this litigation, which is to defend the legality of the rules. The government wants to defend the rules in their entirety, but there's no logical reason to conclude that the government's need to defend the entire rules would therefore make it less vigorous in its defense of the rules as they apply to non-profit organizations. In fact, if you look at the government's papers in this case, I think they've frankly done sort of the reverse. They've relied on the exemption as applied to non-profits. They've made arguments grounded in the alleged harm to religious organizations and relied on them to justify the entire broad scope of the exemption. Counselor, when I look at our cases, when I look at Benjamin, when I look at Kleisler, when I look at Brody, we've been fairly willing to find that there's a difference between kind of the pure, simple, private interest of an intervener and the public interest of the government. And that seems consistent with the Supreme Court in Termovich. But No. 10 says this is not much of a burden at all. So what's the... how do you overcome that? What's the... there's a potential benefit here. The government's been adverse to them in the past. They're willing to throw the moral rule under the bus to save the religious rule under RFRA. That's different from the government's interest in saving the entire package here. Won't that illumine the perspectives of the district court and the court of appeals then? Your Honor, I agree with you that the Third Circuit has in those cases granted intervention and found that the presumption was overcome. But in each of those cases, there were specific facts that the government looked to that led...  Yes, there is a reasonable likelihood here that the interest will diverge and the government will advance arguments that will actually be harmful to the party that seeks... But if we look at the interest in this case as they exist today, the district court's opinion was based on the failure to abide by the APA. That's correct. And the fact that the language of the IFR is contrary to the statute. Do we need to look at all these other hypothetical objections or should we at this point in this case look only what is on appeal before another panel of this court and decide whether on those two distinct issues, whether the interest of the federal government and the Little Sisters are similar? I believe this court should look to just what is on appeal, which is the APA decision. The court, as Your Honor noted, found that the rules violated both the procedural aspect of the APA and the substantive aspect of the APA and that they violated the Affordable Care Act. To be clear, we had never asked for relief that would undermine Zubik, that would change the scope of the previous accommodation or the exemption. We have simply challenged these two new rules. So no matter what, and this is something the district court correctly found, no matter what the outcome of this case, there will be no chance that the Little Sisters will subsequently be subject to fines or failure to comply because the Zubik injunction will remain in place no matter what. Zubik is not a complete permanent injunction. It just gives the parties time to work out a settlement or a resolution. And the IFRs, if they're not a final settlement, they're at least a way station, as your opponent put it, to the final settlement. So it seems odd to suggest that this is utterly irrelevant. They can just rest on their laurels from Zubik when the whole point of the Zubik injunction was to let the parties work out something that was going to look maybe like the IFRs. Well, what the Zubik court did, the Zubik court actually went further and suggested a possible outcome that looks nothing like the IFRs. The IFRs go way beyond what the Supreme Court suggested. But what's relevant for purposes of this case is that Zubik said the government can rely on the fact that the Little Sisters have litigated this case as evidence that they object. It cannot, therefore, require them to submit the necessary form. And most importantly, it may not fine them for that failure. And there's nothing in Zubik that says that direction is time-limited. There's nothing that says if you can't reach a settlement, then this decision goes away. The government simply, as things stand now, cannot fine the Little Sisters under Zubik. It could not fine them previously for separate reasons, but they now have the additional protection of Zubik, which says all the plaintiffs who brought those various cases cannot be fined for failing to submit the necessary form. Well, let's look past where we are now and let's look to the later innings, so to speak. You have sought a declaratory judgment that the IFRs are unlawful, right? Yes, that's correct. And that includes the provision allowing entities like the Little Sisters to opt out of the self-certification process. Well, there are not specific provisions that apply to different types of groups necessarily. There's the moral exemption rule, there's the religious exemption rule. The religious exemption rule essentially says any entity, and that's defined to include publicly traded corporations, can opt out of the exemption and do not need to acquire any notice. So parsing the rule would be a little difficult on those lines, but we have argued that the rules were illegal. And the rules include allowing them to opt out of the self-certification process. Yes, they do. So if you win, they lose the right to opt out of the self-certification process. But they already have that right. Temporarily. Well, again, there's nothing in Zubik that says this is a temporary decision. This is part of Zubik, though, isn't it? I mean, is this not part of what the Supreme Court was indicating in Zubik? Go forward and try to work this out in a way that both sides can agree. And the fact that we're all here, I guess, proves that both sides have not yet come to an agreement, right? This is related to Zubik, obviously, but this is not an extension of the Zubik litigation. And the court recognizes what we said in our preliminary injunction motion was we seek to return to the status quo as existed before these two rules were issued. If you win in that regard, then what happens? What's the next step in the process? Well, I believe the next step would be presumably the government, the federal government would go back to the drawing board, we hope proceed through notice and comment rulemaking, and ideally issue new rules that are more narrow in scope, that don't suffer from... What if those are harmful to the Little Sisters? They've lost the game and they were never allowed to participate, right? Well, the issue of whether the Little Sisters have an interest, we believe, comes down to Zubik, that they are protected under Zubik and... But what's to stop the government on a more fundamental level? If you prevail here, you suggest the government will probably go back to the drawing board and create ways more suitable, in your view. What if the federal government says, you know what, we've got other things to do with our time and we're not interested in this issue anymore? Then the Little Sisters have the protection of the Supreme Court, decreeing that they may not be fined. So there's a bigger picture problem here. For you to be sure that's right, we have to be sure that that reading of the Tenth Circuit and the injunction, it's just an opportunity to speak, it's permanent, even if nothing winds up happening. But our cases say we're supposed to take a practical, pragmatic approach to the interest. If we have real doubt as to how long this lasts, how far the injunction goes, what comes out of it, isn't that itself a practical, pragmatic reason to let the Little Sisters in because they might be harmed? We're not in a position to parse what's going on in the Tenth Circuit. We can't ask it or certify a question to the Tenth Circuit about the status or how long that case goes on or ask the Supreme Court to make it a permanent injunction. We have to take our own best guess on the record. We don't have a lot of confidence that this is a permanent injunction no matter what happens as opposed to just a temporary negotiate something and then we'll duke it out in the context of the IFRs. Well, for what's being referred to as the Zubik injunction to go away, the Supreme Court would essentially have to reverse itself. You have constitutional claims in the suit you've brought. We do, yes. Are you going to pursue those constitutional claims? Well, they are still pending. Are the Little Sisters interested in the potential outcome of those constitutional claims? Not if it does not affect the exemption that they have, the protection they have under Zubik, which it will not. It might. David, I mean, you're arguing about how much protection they may have under the Constitution. We are arguing about whether these two rules that the government issued are valid under the Constitution. We are not challenging anything that went before. In order to make those arguments, you're saying RFRA doesn't require these rules. There's an establishment clause problem with these rules, et cetera. And those also feed in, by the way, to the procedural APA, whether they were justified in bypassing notice and comments. I'm not sure we can separate these. You plan to take this up to the Supreme Court, I'm presuming, and your adversaries are arguing. That could wind up shaking the foundations of the temporary protection from fines that they had. Well, I think the inquiry should be focused on the relief that we have suffered. Okay, so you're not disputing that you may well take this up to the Supreme Court, and you're not disputing that if you win a Grand Slam home run, that RFRA and free exercise clause might be off the table and the ZUPA conjunction might be affected. Well, no, I would actually dispute the second point. And now the Supreme Court, I can't speak. I mean, we're happy with where things are now, so we don't want to take this anywhere else. Usually the party sitting on that side is pretty happy. RFRA will never be off the table because RFRA was the basis for the decision in Hobby Lobby. RFRA is very, you know, extremely relevant here. The question is, how far does RFRA go? And what we've argued is that what the government said here, that RFRA requires this broad exemption, is simply wrong. We have not ever said that the Supreme Court should reverse ZUBA. That seems to be the nub here. You're sort of encouraging us to accept the permanency of the ZUBIC injunction because that's what gives the Little Sisters protection from the fines, et cetera. Is that fair? That's correct. So we think if we disagree that ZUBIC is permanent and it was intended to be a temporary way station in the course of this larger debate which has gone on in different courts around the country, then we need to let them intervene, no? Or if we're right about its lack of permanency, do you have an argument as to why we should still affirm the district court? Well, regardless, there would be the issue of adequacy of representation. The government can adequately represent their interests here. But on the issue of ZUBIC, if ZUBIC by its own terms were limited, if it said as long as these lower court cases are pending, then the government may not fine the Little Sisters, if it said for the next two years the government may not fine them, then we would be in a different situation. But what ZUBIC says is because the government may rely on this notice, the government may not impose taxes or penalties on petitioners for failure to provide the relevant notice. There's nothing in there that suggests it's time-limited. The Tenth Circuit can't change that. There's nothing to indicate it's permanent. Well, until, I mean... Is it fair to say that ZUBIC was remarkable in the sense that it was a non-decision of sorts? It was unusual, certainly, and... But not in that regard? No, and given the makeup of the court at the time, I think the court tried to reach what it deemed to be a fair resolution. But in the course of doing that... Well, it was split four to four, wasn't it? So it wasn't going to reach any resolution. This is why we're saying it was three instead of four. Yes. Your Honor, ZUBIC was unusual. I believe it likely was a result of the makeup of the court, although the decision that came down was unanimous. There was no noted dissent. But regardless, ZUBIC is a decision of the Supreme Court that says, Government, you may not find little sisters. And I don't believe there's any expiration date on ordinary decisions of the Supreme Court. I mean, we're, you know, we cite Marbury v. Madison. It's not as if, you know, that case has gone away. Counselor, let's focus on another possible interest of the little sisters. There's case law out there that says that the moving party behind the change in law has an interest. There's some Sixth Circuit case law about the Chamber of Commerce. There's D.C. Circuit case law. So if they're the moving force invited to the Rose Garden ceremony, they're cited in the preamble or justification for the IFRs as this litigation prompted this. Mightn't they have an interest in defending the outcome of their years-long fight? Well, again, typically the moving party will have an interest because the resulting change will directly give them relief that they did not previously have, give them a benefit that they did not previously have. Here, what the IFRs do is provide relief that the little sisters already enjoyed courtesy of the Supreme Court. So if they had received... Which is why they want to defend the IFRs, right? Well, I believe they want to defend the IFRs because they agree with them on, you know, as a policy matter. One of the interesting things about the case is that, you know, what's the Commonwealth's interest? You know, they're a party in other cases involving the same issue. The Commonwealth is a new entrant. I mean, the Commonwealth is bringing this, I guess, as your complaint said, on behalf of people of the Commonwealth. Both on behalf of the people as quasi-sovereign and on behalf of the Commonwealth directly because given the nature of these IFRs, their sheer breadth, costs will be borne by the Commonwealth's health systems that provide contraception, that provide maternity benefits. If you win, those costs won't be... you won't have to expend those costs. Yes, exactly, because employers will be paying for, will be providing contraceptive benefits. Yeah, but if you win, then our conscience is violated, and your answer to that is no, see Zubik. Exactly, yes, they are protected by Zubik. And also, the government has made clear that it fully intends to defend these rules, which is the same position, at least in the district court, as the religious exemption rule that the Little Sisters took. The fact that they... So if the government changed its position next week and said we're just going to defend these things as a moral matter, not as a religious matter, you'd have to concede that the Little Sisters do have a right to intervene. If the government... It's all about the government's position on any given month or year. Well, if the government dropped its defense of the religious exemption rule, we'd be in an interesting position because then the rule would presumably go away, and HHS would no longer be trying to enforce it. We'd have an unusual situation where the agency that promulgated the rule had withdrawn it. But there's nothing in the record that says that this administration is likely to drop its defense of anything. And in any case involving the government, there's the hypothetical that elected officials may be replaced, they may change. That's true in all these cases, and courts still find that there's the presumption that where the government is charged with defending a policy, especially where it's a policy that that government agency promulgated, and this was the court's observation in the Rizzo case, they are presumed to be adequate to that task. In fact, who better to defend the policy than the government agency that promulgated it and justified it on all the bases that are listed in the IFRs? One last question. My colleagues may have some. Do you want to go first? Well, standard of review we have not gotten into. What is your position? Is there an abuse of discretion here? There isn't. Well, yeah. The standard of review is abuse of discretion, both for permissive and mandatory. It is a more searching review in the mandatory context, in the context of intervention of right. I believe that the quote is either a misconstruing of the law or a conclusion that this court is confident is incorrect. I believe that's how the abuse of discretion standard is applied in the context of intervention of right. When we're dealing with permissive intervention, the standard is essentially pure abuse of discretion, so that's a task given to the discretion of the district judge, as it should be, because district courts manage their dockets all the time and have to make decisions about whether to let new parties in, what effect that will have on the proceedings in the case and the ultimate outcome. You relied in the district court, relied on the Virgin Islands case. Yes. Why is this case more like that one than it is like Kleisler? Well, both of those cases are consistent in that they say the government agency that defends a policy is presumed adequate to defend it. In Virgin Islands, you had the government challenging prison conditions. You had an inmate who was going to benefit from that challenge, and the court said there's a presumption of adequacy here. There's nothing in the record to rebut that. Therefore, we find that inadequacy has not been established. In Kleisler, Kleisler was a much more complicated decision. It shows that this is often a pragmatic, fact-intensive inquiry. One of the facts in Kleisler was that the government agency had previously not chosen to appeal a prior adverse decision, and that was seen as some evidence that, perhaps in this case, the government was actually not going to vigorously enforce the contracts as they would have benefited the would-be intervenors, both the commercial intervenors and the schools that wish to receive money. Thank you, Mr. Fisher. We'll hear the rebuttal of Ms. Winton. Thank you. Just three quick points. The first one is on standing. Mr. Fisher said that in our answer we were seeking to reject the entire case. We do believe that the court should reject Pennsylvania's entire case under Article III because we plan to argue that Pennsylvania lacks standing. It is not established that there are actually any individuals within Pennsylvania who are going to be harmed, and so therefore there are no harms that are going to flow to the state because of these IFRs. I think it is worth noting that when Pennsylvania was arguing before the district court and was arguing irreparable harm, this is not in the appendix, but it is in the lower court record at docket 8-2, pages 41 through 42. This is Pennsylvania's brief in support of its motion for preliminary injunction. What Pennsylvania did there was it listed several other mandate challengers, including some of those who were with the Little Sisters parties to the Zubik case before the Supreme Court. It listed those groups located in Pennsylvania and said that because those groups were located within its bounds, they showed proof that Pennsylvania was going to be harmed by these IFRs. This gets into my second point, which is that Pennsylvania's case is designed to undermine Zubik and at a minimum to get the courts to weigh in on exactly what Zubik means. You see this in what they argued in their motion for preliminary injunction. You see it in their complaint, arguing that RFRA does not compel exemptions for groups like the Little Sisters of the Poor, arguing that such exemptions are invalid per se under the Establishment Clause because they privilege religious interests over other interests, arguing that such exemptions are invalid per se under the Equal Protection Clause because they impact a regulation that was designed to benefit women. I don't see how Pennsylvania can make those claims and then argue that the Little Sisters' interests are not at stake by something which would not only invalidate the current IFRs, but tie the government's hands in future rulemakings and impact the Little Sisters' ability to receive a final resolution of their own claims. Third, on the question of permanency, the Little Sisters are seeking to have a final resolution to their case. Even if we take their current injunction in Zubik as being final, they're also interested in not having that injunction narrowed through a narrowing construction that a lower court might apply. In our reply brief, we mentioned the issue with Express Scripts, one of Little Sisters' third-party administrators. Pennsylvania has asked the courts to construe Zubik in a way that would still require the government to try and reach out and regulate third-party administrators. The Little Sisters are concerned that even in the face of an injunction that protects them from fines, there may be a narrowing construction applied to Zubik which would allow the government to take actions, perhaps compel the government to take actions that the Little Sisters had been arguing against and argued against in Zubik. Is there a monetary connection via Express Scripts to Little Sisters? Express Scripts is a pharmacy benefits manager that helps to administer the Little Sisters' plan. The government has indicated that Express Scripts may be regulated as a third-party administrator. Express Scripts is a secular company. It's not party to the Little Sisters' class action in its existing case. The Little Sisters also have concerns about collateral attack. If Pennsylvania were successful in receiving a ruling that violates the Establishment Clause to exempt religious groups from this mandate, they would be concerned about an attempt to go back and revisit their injunction if the legal basis for it has been removed. Let me ask you the same question I asked Mr. Fisher. Do you concede that if Zubik is permanent relief to your clients that you lose? No, Your Honor, I do not. And for the reasons I just mentioned, because the Little Sisters... The limiting principle, that's your fallback position? I assume your opening bid is it's not permanent, it's ongoing, we're still in the middle of Zubik. Is that right? My primary argument would be the fact that Pennsylvania is ultimately trying to revisit Zubik. And so the case, what Zubik means, what the Supreme Court expects the parties to do as a result of that is ongoing. Well, they don't agree with that. They say Zubik is there and it's the precedent, like Marbury, and it's not going anywhere. So why are they wrong about that? What Pennsylvania has asked this Court to do, ultimately wants to seek Supreme Court review of, is what the Supreme Court meant in Zubik. So there's both a narrowing construction and there's an argument that Zubik cannot, or that the Supreme Court cannot, regardless of what may have happened in Zubik, protect groups like the Little Sisters of the Poor and grant them a complete exemption. To be clear, I believe these arguments are wrong and I believe they ought to be foreclosed, but that is what Pennsylvania is seeking to do in this action. And that is why the Little Sisters have a significant protectable interest that may be affected or impaired as a practical matter by the disposition of Pennsylvania's claims. What is the standard of review here? You agree it's abuse of discretion? So what is the abuse here? Abuse of discretion is a misapplication of the law. The district court misapplied the law by not recognizing that the Little Sisters have a legally cognizable interest in this case, by not recognizing that that interest may be affected or impaired as a practical matter by the disposition of this action, and by concluding that the government could adequately represent the Little Sisters in this case. I believe that the district court misapplied this court's precedence in Benjamin, in Brody, and in Kleisler in its determination of the Little Sisters' injunction motion. And so for all these reasons, the district court's decision should be set aside and the Little Sisters granted intervention as of right or, in the alternative, permissive intervention. Thank you, Ms. Windham. The court is very appreciative of the outstanding arguments of counsel and the briefing as well, particularly in light of the expedited nature of the case. We will take the matter under advisement and ask the crier to adjourn court.